## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **INPWR INC.** | : | **CASE NO. 2:21-CV-00821** |
| **VERSUS** | : | **JUDGE TERRY A. DOUGHTY** |
| **OLSON RESTORATION LLC ET AL.** | : | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the court is a motion filed by Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital ("LCMH").[1] Doc. 32. The motion concerns the discoverability of an email and attachments that InPwr, Inc. ("InPwr" or "IP") produced in the course of discovery, apparently inadvertently. LCMH requests that the court determine that the documents are not privileged and therefore discoverable. Doc. 32, p. 7. InPwr opposes. Doc. 46. The parties have briefed this matter extensively [docs. 32, 46, 58, 68], and the matter is now ripe for determination. The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the local rules of court.

For the reasons stated herein, plaintiff's motion is **DENIED.**

### I.
#### BACKGROUND

In February or March of 2021, Plaintiff InPwr, Inc. ("InPwr") made a large production of documents to LCMH. Doc. 32, p. 2. Included in the production was an email from InPwr

---

[1] The motion is styled, *LCMH's Motion to Address Extent to Which Documents That Were Possibly Inadvertently Disclosed by InPwr Are Discoverable, Under Exceptions to the Attorney-Client Privilege and/or the Work Product Doctrine*. Doc. 32.

executive Staci Inskeep to other InPwr personnel and InPwr counsel Lowell Woods, Jr., dated January 27, 2021 (the "Inskeep Email") Doc. 32, p. 1.  The Inskeep Email had as its subject line, "FW: Private and Confidential RE:  Requested ESP invoice to InPwr." Doc. 32, att. 1, p. 4.[2]  There were no third parties copied on the communication.  *Id.*

Counsel for LCMH discovered and reviewed the Inskeep Email on or about June 16, 2021.  Doc. 32, p. 1-2.  By letter dated June 18, 2021, LCMH counsel contacted InPwr counsel in accordance with Fed. R. Evid. 502, which governs inadvertent disclosures of potentially privileged information.  Doc. 32, p. 2.  In a June 24 phone call that followed, the parties were unable to agree about the extent to which the Inskeep Email may be privileged, prompting the instant motion.  Doc. 32, p. 2-4.

In the unredacted portions of the Inskeep Email string, Staci Inskeep of InPwr has a conversation with Chris Williamson of defendant Expediated Service Partners LLC ("ESP") concerning sharing "all versions of ESP invoices" with LCMH in an effort to be "100% transparent with the hospital" and "clear up some misconceptions on the rates we initially charge [sic] LCMH [. . . ]." Doc. 32, att. 1, p. 6-7.

InPwr describes redacted portion of the Inskeep Email (i.e., the portion submitted for i*n camera* review) as follows, reserving any privilege:

> the email discusses an existing allegation by LCMH that the invoices submitted constitute "price-gouging." The InPwr representative addresses to counsel its position and defense to that allegation, and the InPwr representative conveys a proposed communication potentially to be sent to a third-party (not LCMH) regarding that issue. In the email, the InPwr representative seeks advice regarding the proposed communication to a third-party.

Doc. 46, att. 7.

---

[2] LCMH attached a redacted version of the Inskeep Email to the motion.  Doc. 32, att. 1.

Counsel for LCMH submitted the Inskeep Email for *in camera* review when it filed the instant motion. Doc. 32, p. 4. InPwr argues that it was "'entirely inappropriate' for LCMH to unilaterally submit the email in question to the Court for an *in camera* inspection." Doc. 46, p. 10. In light of InPwr's arguments, the court has not reviewed the *in camera* submission.[3]

In its original motion and memorandum, LCMH argues that, even if some or all of the Inskeep Email is privileged, the crime-fraud exception under La. Code Evid. art. 506(C)(1) applies to the contents of the memorandum, making it discoverable despite any privilege asserted by InPwr. The heart of LCMH's argument is that LCMH was the victim of "price gouging" or unfair pricing that resulted from deceptive communications directed at LCMH, and that the Inskeep Email is evidence of the fact that an InPwr employee suspected those allegedly deceptive practices in January 2021 and did not disclose them to LCMH because InPwr was concerned about its own bottom line. Doc. 32, att. 2, p. 7; doc. 58, p. 8. LCMH also argues that InPwr waived any privilege by producing the Inskeep Email in the document production and neglecting to take proper steps to remedy that disclosure. Doc. 58.

InPwr argues in its opposition that the crime-fraud exception is inapplicable here because LCMH has not borne its burden of making a prima facie showing that a crime or fraud has been committed, without considering the allegedly privileged communication. Doc. 58. InPwr argues that the Inskeep Email was plainly inadvertently disclosed, that InPwr took reasonable steps to prevent its disclosure, and that InPwr took reasonable steps to rectify its error by asserting privilege in the June 24 phone call and thereafter. Doc. 68, p. 3. Thus, InPwr argues, there is no applicable exception to the attorney-client privilege or work product doctrine that would allow discovery of

---

[3] As discussed below, the court must apply the crime-fraud exception without considering the content of the allegedly privileged communications; therefore the court reserved review of the Inskeep Email until after conducting that analysis. *See State v. Taylor*, 502 So. 2d 537, 542 (La. 1987). Having now found that the Inskeep Email is privileged, the court sees no reason to conduct an *in camera* review of it.

the Inskeep email. InPwr also argues in its sur-reply that LCMH waived arguments not raised until the reply. Doc. 68.

## II.
## LAW & ANALYSIS

### A. Applicable Law

In this diversity case, state law applies to InPwr's claims of attorney-client privilege, and federal law governs whether the items are immune from discovery under the work product doctrine. *See Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) (applying state law to claims of attorney-client privilege and federal law to claims of work-product immunity in diversity matter); *Davis v. United States*, No. 2:05-CV-767, 2006 WL 2883042, at *1, n. 1 (W.D. La. Oct. 4, 2006); *Conoco Inc. v. Boh Brothers Constr. Co.*, 191 F.R.D. 107, 118, n. 6 (W.D. La. July 10, 1998). Although the communication is potentially protected from discovery under both work-product doctrine an attorney-client privilege, the parties focus their arguments on the latter, and the court will focus its analysis there.

Louisiana law creates a general attorney-client privilege for among other things, a "confidential communication" made "for the purpose of facilitating the rendition of professional legal services to the client [ . . . ], when the communication is [ . . . ] [b]etween the client or a representative of the client and the client's lawyer or a representative of the lawyer." La. Code Evid. art. 506(B). The attorney-client privilege allows the client to "refuse to disclose, and to prevent another person from disclosing" such a communication. *Id.*

#### 1. *Crime-fraud exception to attorney-client privilege*

Article 506 creates several exceptions to the attorney-client privilege, among them the so-called "crime-fraud" exception, under which there is no privilege as to a communication:

> (a) If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client or his representative knew or reasonably should have known to be a crime or fraud.
>
> (b) Made in furtherance of a crime or fraud.

La. Code Evid. art. 506(C)(1). Under Louisiana law, "[i]n order to vitiate the attorney-client privilege, the trial court must make a finding that the attorney-client relationship was intended to further continuing or future criminal or fraudulent activity." *Bridlington Co., L.L.C. v. S. Disposal Servs., L.L.C.*, 51,138, 216 So. 3d 219, 223 (La. App. 2 Cir. 2/15/17). This involves a two-step showing: "The party challenging the privilege must (1) make an independent prima facie case that a crime [or fraud] has been committed, and (2) then demonstrate that the privileged information bears a relationship to the alleged crime or fraud." *Id.* (alteration added); *Ward v. Succession of Freeman*, 854 F.2d 780, 789-90 (5th Cir. 1988). "Included as part of the prima facie case of fraud is evidence of an intent to deceive." *S. Scrap Material Co. v. Fleming*, No. CIV.A. 01-2554, 2003 WL 21474479, at *2 (E.D. La. June 18, 2003). Courts should evaluate whether the proponent has borne its burden of showing criminal or fraudulent activity "without considering the allegedly privileged communications." *State v. Taylor*, 502 So. 2d 537, 542 (La. 1987) (on second rehearing, discussing procedure for proving crime-fraud exception in criminal context). "Mere allegations of fraud are not, however, sufficient to break the privilege." *Ward,* 854 F.2d at 790. "In determining whether the crime-fraud exception applies, we focus on the client's purpose in seeking legal advice." *U. S. v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002).

### 2. *Waiver of privilege through disclosure*

The attorney-client privilege may be waived if the holder of the privilege "voluntarily discloses or consents to disclosure of any significant part of the privileged matter." La. Code Evid. 502(A). Under Louisiana law, inadvertent disclosure does not constitute a waiver of the attorney-

client privilege. *Hebert v. Anderson*, 681 So. 2d 29, 31-32 (La. App. 4 Cir. 1996), *writ denied*, 684 So. 2d 936 (citing *Succession of Smith v. Kavanaugh, Pierson & Talley*, 513 So. 2d 1138 (La. 1987)). When such a letter comes into the hands of opposing counsel through inadvertent disclosure, it may be appropriate to order all copies destroyed. *Id.* at 32.

After LCMH discovered the "possibly inadvertently disclosed" material, counsel proceeded according to Fed. R. Evid. 502, which governs the treatment of such inadvertent disclosures. The rule states, in pertinent part:

> Inadvertent Disclosure. When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b). This "rule makes no attempt to alter federal or state law on whether a communication or information is protected under the attorney-client privilege or work-product immunity as an initial matter." Fed. R. Evid. 502 advisory committee's note to 2007 amendments.

### B. Application of provisions governing inadvertent disclosure of attorney-client privileged information

As a threshold matter, the Inskeep Email meets the general definition of an attorney-client privileged communication under Louisiana Law. The general rule of attorney client privilege covers confidential communications between a client representative and the client's attorney, "made for the purpose of facilitating the rendition of professional legal services to the client." La. Code Evid. art. 506(B). Here, there is no dispute that Inskeep, an InPwr representative, contacted InPwr counsel, Lowell Woods, for legal advice. In the June 18 letter from LCMH counsel advising

InPwr counsel that the letter had been included in document production, LCMH acknowledges that the Inskeep Email is "seeking advice as to a proposed communication with Chris Williamson of ESP." Doc. 32, att. 1, p. 1. There were no third parties copied on the communication, suggesting that it is a confidential communication for the purposes of La. Code Evid. art. 506(A)(5). Doc. 32, att. 1, p. 4.[4] On its face, therefore, the Inskeep Email is protected from discovery by attorney-client privilege unless the privilege was waived or an exception applies.

### 1. *Application of the crime-fraud exception to attorney-client privilege*

LCMH argues that the crime fraud exception applies here because "LCMH is making an adequate prima face showing of deceptive and misleading conduct that is tantamount to fraud in its Counterclaims and Crossclaims and the exhibits referenced in same." Doc. 32, att. 2, p. 5. LCMH's assertion that it has made a prima facie showing of fraud or fraudulent activity is wholly conclusory and effectively invites the court to review its Counterclaims and Crossclaims and determine for itself that LCMH has stated a prima facie case of crime or fraud against InPwr and its co-defendants. The court declines to do so because LCMH "has the burden of establishing a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity," including "evidence of an intent to deceive." *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002); *S. Scrap Material Co. v. Fleming*, No. CIV.A. 01-2554, 2003 WL 21474479, at *2 (E.D. La. June 18, 2003). As a first step this means presenting the court with a showing of crime or fraud "(s)uch as will suffice until contradicted and overcome by other evidence .... (a) case which has proceeded upon sufficient proof to that stage where it will support finding if

---

[4]There seems to be no question here that the communication was intended to be confidential, (5) A communication is "confidential" if it is not intended to be disclosed to persons other than:
    (a) Those to whom disclosure is made in furtherance of obtaining or rendering professional legal services for the client.
    (b) Those reasonably necessary for the transmission of the communication.
    (c) When special circumstances warrant, those who are present at the behest of the client and are reasonably necessary to facilitate the communication.

evidence to contrary is disregarded." *In re Grand Jury Proc. in Matter of Fine*, 641 F.2d 199, 203 (5th Cir. 1981)(alteration original, adopting district court's quotation of Black's Law Dictionary (4th ed. 1968)). LCMH has not attempted to bear this burden except by reference to its counterclaims and crossclaims, and the court finds this showing inadequate.

Assuming for the sake of argument that LCMH's pleadings do set out such a prima facie case of fraudulent activity, LCMH does not "then demonstrate that the privileged information bears a relationship to the alleged crime or fraud." *Bridlington*, 216 So. 3d at 223. LCMH suggests that the email shows that Inskeep developed a suspicion that ESP was being underhanded, and that InPwr erred in failing to timely disclose that suspicion to LCMH. But LCMH does not otherwise explain how this particular email was "[m]ade in furtherance of a crime or fraud" or sought legal advice to enable someone to "commit or plan to commit [ . . . ] a crime or fraud." La. Code Evid. 506(C)(1)(alteration added).

To the contrary, LCMH suggests that, in the privileged communication, Inskeep "declared that her company was the victim of deceptive conduct by ESP." Doc. 32, att. 2, p. 5. LCMH also explains that Inskeep sought the advice of counsel in attempt to "shed light on ESP['s] deceptive conduct" but was apparently prevented from doing so. Doc. 58, p. 8 (alteration added). This reasoning all but admits that Inskeep's email sought counsel's advice about the prospect of ***countering*** potentially deceptive conduct, not furthering it. LCMH declares that "delayed disclosure of the details and origin of ESP's fraudulent conduct, as spelled out in the subject email, could also be said to have perpetuated the fraud, by delaying its discovery for several months." Doc. 32, att. 2, p. 5. But LCMH does not suggest that Inskeep contacted counsel ***for the purpose*** of delaying disclosure and furthering fraudulent conduct.

In short, LCMH clearly believes that the Inskeep Email is evidence of the fraudulent activity it seeks to expose,[5] but LCMH does not show that the Inskeep Email was made in furtherance of that fraudulent activity.  "The test is whether the client's purpose is the furtherance of a future fraud or crime; it is not enough that a communication merely provides evidence of fraud."  *S. Scrap Material Co. v. Fleming*, No. CIV.A. 01-2554, 2003 WL 21474479, at *2 (E.D. La. June 18, 2003).  The court therefore concludes that the crime-fraud exception does not apply here.

### 2. *Application of law governing waiver of privilege*

In its reply brief, LCMH raises the argument that the Inskeep email does not qualify for protection under laws governing inadvertent disclosures because, in effect, InPwr did not follow proper procedures to protect the document from disclosure in the first place or remedy its inadvertent disclosure.[6]  LCMH also suggests that the disclosure might not have been inadvertent at all.  Doc. 58, p. 1.

As to the argument that the disclosure was not inadvertent, InPwr states that the "email was inadvertently disclosed when InPwr produced a large volume of documents [ . . . ]."  Doc. 46, p. 7.  The court sees no reason to find otherwise, notwithstanding LCMH's arguments.  LCMH argues that "the disclosure happened not once, but twice" in two stages of document production.  Doc. 58, p. 2.  LCMH also argues that the Inskeep Email was part of information "voluntarily exchanged" as a part of a dispute-resolution process intended to avoid litigation.  Doc. 58, p. 1.  InPwr argues, and the court agrees, that this is insufficient to show voluntary waiver of a privileged

---

[5] LCMH points out this this is "the only available evidence that InPwr learned and admitted in January of 2021 that the ESP rates" were unfair.  Doc. 32, att. 2, p. 7.

[6] LCMH also argues that Fed. R. Evid. 502 does not apply because "the disclosure was not made in a court proceeding, federal or state."  LCMH does not explain—and the court fails to perceive—how this fact would somehow vitiate the attorney client privilege that arose by operation of Louisiana law, per La. Code Evid. art. 506.

communication under La. Code Evid. art. 502 where, as here, InPwr asserted such privilege when the disclosure was brought to its attention. *See United States v. Edwards*, 39 F. Supp. 2d 716, 738 (M.D. La. 1999).

In its reply brief, LCMH also argues that, even if the disclosure was inadvertent, Fed. R. Evid. 502 "does not apply" because "IP did not take reasonable steps to prevent the disclosure;" and "IP did not take reasonable steps to rectify any alleged error in making the disclosure." Doc. 58, p. 1. LCMH does not cite any jurisprudence in support of these arguments. Under the heading "IP did not take reasonable steps to prevent the disclosure" LCMH does not describe alternate steps InPwr might have taken to prevent the disclosure, and instead argues that InPwr is talking out of both sides of its mouth by arguing that the content of the Inskeep Email is privileged. Doc. 58, p. 2-3. In support of the argument that InPwr took inadequate steps to remedy the disclosure, LCMH points solely to the fact that several months passed between the inadvertent disclosure and LCMH's discovery of the same among the large document production. Doc. 58, p. 4. Neither of these arguments is supported by jurisprudence, and the court is therefore unpersuaded.

The court notes InPwr's argument that LCMH has waived these arguments (concerning the applicability of Fed. R. Evid. 502) by waiting until its reply brief to raise them. Doc. 68, p. 2. InPwr urges the court to act in accordance with "the practice of [the Fifth Circuit] and the district courts to refuse to consider arguments raised for the first time in reply briefs[,]" and consider the new arguments raised in LCMH's reply waived. *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008)(alteration added). Finding the arguments unsupported, the court need not consider whether they were also waived.

### C. LCMH's requested alternative relief

In the alternative to seeking full discoverability of the Inskeep Email, LCMH requests that InPwr be required to "stipulate to the facts stated by Mrs. Inkseep in the subject document." Having found that the subject document is protected from discovery by attorney-client privilege, the court is unaware of any authority that would allow the court to require InPwr to stipulate to its contents.

## II.
### Conclusion

For the foregoing reasons, it is **ORDERED** that LCMH's Motion to Address Extent to Which Documents That Were Possibly Inadvertently Disclosed by InPwr Are Discoverable, Under Exceptions to The Attorney-Client Privilege and/or the Work Product Doctrine [doc. 32] is **DENIED**.

THUS DONE AND SIGNED in Chambers this 23rd day of June, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE