UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **InPwr, INC.** | : | **CIVIL ACTION NO. 21-cv-0821** |
| **VERSUS** | : | **JUDGE TERRY A. DOUGHTY** |
| **OLSON RESTORATION, LLC, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Rule 12(b)(6) Motion to Dismiss Counterclaim filed by InPwr, Inc. ("InPwr") [doc. 51] seeking dismissal of the claim filed against it ("the Counterclaim") by Southwest Louisiana Hospital Association, d/b/a Lake Charles Memorial Hospital ("LCMH") [doc. 31]. The motion is opposed by LCMH [doc. 70], which also filed a "Notice of Supplemental Authority." Doc. 102.

This matter has been referred to the undersigned for review, report, and recommendation. Doc. 55. For reasons stated below, it is

**RECOMMENDED** that the Motion to Dismiss be **GRANTED.** We recommend that Count One of the Counterclaim be dismissed with prejudice. We recommend that Count Two of the Counterclaim be dismissed without prejudice to the right of LCMH to amend its cross-claim to allege, if it can, any ascertainable loss of money or movable property attributable to InPwr's allegedly unfair or deceptive trade practices.

# I.
## BACKGROUND

This matter began as a suit filed by InPwr against Olson Restoration, LLC, d/b/a ServPro Disaster Recovery Team Olson ("ServPro"),[1] LCMH, and Expedited Services Partners, LLC, ("ESP"). Doc. 1. InPwr alleges we enjoy diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that "this is a civil action between citizens of different states and the amount in controversy exceeds Seventy-Five Thousand and 00/100 ($75,000) Dollars."[2] *Id.*, p. 2. The original complaint was amended but only to clarify the citizenship of the parties. Doc. 12.

In the factual background of its complaint (¶¶ 5–12), InPwr notes that substantial damage was caused throughout Southwest Louisiana because of Hurricane Laura's landfall on August 27, 2020. *Id.* It alleges LCMH invited its representatives to assess damage caused to power systems supporting LCMH facilities as LCMH's emergency backup generators were inadequate. It claims LCMH engaged ServPro as its prime contractor for recovery work, which would include temporary power equipment rental and installation, and that ServPro in turn entered into a Master Subcontract Agreement and Statement of Work with InPwr for InPwr to complete work necessary to restore LCMH's power. InPwr claims it began work on September 3, 2020, and "[t]hrough a combination of its own in-house engineering resources and the procurement of critical power equipment from ESP," it was able to supply full temporary power to LCMH by October 11, 2020. Doc. 1, p. 3. InPwr claims its work was directed by representatives of LCMH and that "representatives of . . . LCMH ensured" it would be paid for its work, a promise upon which it relied. *Id.*

---

[1] The shorthand version for this party has been listed differently by different parties. To avoid confusion, we ask that all hereafter refer to this party as "ServPro."

[2] By Report and Recommendation, we suggested to the district court that it determine we do enjoy subject matter jurisdiction and the recommendation has been adopted by the district court. Docs. 142, 155.

LCMH answered the original and amended complaints. Doc. 25.  It also filed a Counterclaim against InPwr and ESP.  As noted above, ESP is a defendant to the main demand filed by InPwr and it also filed a cross-claim against LCMH asserting various theories under which it claims it is owed money from LCMH. Doc. 4.  Early in the Crossclaim, LCMH sets the table for its version of this litigation, referring to

> the obstinate, non-transparent, ever changing, deceptive manner in which each of said Defendants, but primarily [InPwr] and ESP, has repeatedly taken steps, individually and in concert, to try and gouge LCMH with greatly inflated, unjustified, largely unexplained prices for their services, in the days immediately following Hurricane Laura . . . .

Doc. 31, p. 2.  The following thirty-four pages of LCMH's pleading contain details of what it generalizes in the quotation above.[3]  Finally, at page 38, LCMH sets forth its claims.

The claims against InPwr are as follows:

> **COUNT ONE**:  **DECLARATORY RELIEF.**  LCMH seeks declaratory relief pursuant to 28 U.S.C. § 2201, et seq, that:
>
> a. LCMH has no contractual obligations to InPwr;
> b. LCMH has no "open account" obligations to InPwr;
> c. InPwr has no valid lien rights against LCMH;
> d. Overcharges from InPwr are covered by the Louisiana Anti-Gouging Act ("AGA"), La. R.S. 29:732, et seq, as well as the Louisiana Governor's August 21, 2020 "State of Emergency Proclamation;"
> e. InPwr's conduct is violative under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401, et. seq.; and
> f. LCMH should pay a reasonable cost for services provided.
>
> **COUNT TWO:**   **LUTPA VIOLATIONS**.   InPwr's conduct was intentionally deceptive and misleading and violative of the LUTPA.  LCMH seeks "all recoverable damages and attorney fees in connection" therewith.

---

[3] We would like to take this opportunity to remind all parties that Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  It does not require detailed factual allegations, although the Supreme Court has instructed us that it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 129 S.Ct. 1937, 1949 (2009), citing as authority *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964–64 (2007).  Nothing in Rule 8, *Twombly*, or *Iqbal* requires 36 pages of detailed allegations of allegedly nefarious conduct inflicted by opposing parties in order to state a claim that would survive Rule 12(b)(6) scrutiny.

*Id.*, p. 38.  In short, the Counterclaim submitted by LCMH against InPwr seeks a declaration that all claims against it asserted by InPwr in the original claim do not exist and that InPwr violated the AGA and LUTPA.  To these claims ESP has filed its own Rule 12(b)(6) Motion to Dismiss. Doc. 48.  We have recommended to the district court that ESP's motion be granted. Doc. 179.

In support of its motion, InPwr simply adopts and incorporates the arguments made by ESP in its Rule 12(b)(6) motion. Doc. 51, p. 3.  Rather than repeating ESP's arguments here, we refer the reader to our Report and Recommendation issued suggesting the district court grant that motion. Doc. 179, p. 4.  In response, LCMH similarly adopts and incorporates its response to ESP's motion. Doc. 70, p. 1.  So again, we refer the reader to our Report and Recommendation issued with respect to ESP's motion for an understanding of LCMH's position. Doc. 179, pp. 5–6.

## II.
### LAW AND ANALYSIS

Insofar as InPwr merely adopts the arguments of ESP raised in ESP's Rule (12)(b)(6) motion and further insofar as LCMH merely adopts its responses to ESP, then we merely adopt our reasoning in our Report and Recommendation. Doc. 179, pp. 6–11.  For those reasons we recommend that the Motion to Dismiss Counterclaims filed by InPwr be granted with prejudice as to Count One of the Counterclaim and, as to Count Two, without prejudice to the right of LCMH to amend and allege, if it can, any ascertainable loss of money or movable property attributable to InPwr's allegedly unfair or deceptive trade practices

## III.
### CONCLUSION

For reasons stated, it is

**RECOMMENDED** that the Motion to Dismiss Counterclaim filed by InPwr, Inc. [doc. 51] seeking dismissal of the Counterclaim by Southwest Louisiana Hospital Association, d/b/a Lake Charles Memorial Hospital [doc. 31] be **GRANTED.** We recommend Count One of the Counterclaim seeking declaratory relief be dismissed with prejudice. We recommend that Count Two of the Counterclaim seeking relief pursuant to the Louisiana Unfair Trade Practices Act be dismissed without prejudice to the right of LCMH to amend the Counterclaim to allege, if it can, any ascertainable loss of money or movable property attributable to InPwr's allegedly unfair or deceptive trade practices.

Under the provisions of 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n,* 79 F.3d 1415, 1429–30 (5th Cir.1996).

THUS DONE AND SIGNED in Chambers this 16th day of September, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE