UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **INPWR, INC.** | : | **CASE NO. 2:21-CV-00821** |
| **VERSUS** | : | **JUDGE TERRY A. DOUGHTY** |
| **OLSON RESTORATION L L C ET AL** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a motion to dismiss filed by defendant, Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital (hereinafter "LCMH"). Doc. 53. The motion is filed pursuant to Federal Rule of Civil Procedure 12(b)(6) and seeks dismissal of certain crossclaims brought by Olson Restoration, LLC, d/b/a Servpro Disaster Recovery Team Olson ("ServPro").[1] ServPro opposes the motion. Doc. 71. LCMH has replied [doc. 80] and provided supplemental authority [doc. 101], and the matter is now ripe for resolution.

The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For reasons stated below, it is

**RECOMMENDED** that the Motion to Dismiss be **DENIED**.

**I.**
**BACKGROUND**

This suit began when filed by InPwr, Inc. ("InPwr") against ServPro, LCMH, and Expedited Service Partners, LLC ("ESP"). Doc. 1. InPwr alleges that this court enjoys diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that "this is a civil action between citizens of different

---

[1] The shorthand version for this party has been listed differently by different parties. To avoid confusion, we ask that all hereafter refer to this party as "ServPro."

states and the amount in controversy exceeds Seventy-Five Thousand and 00/100 ($75,000) Dollars."[2] *Id.*, p. 2. In the factual background of its complaint (¶¶ 5-12), InPwr notes that substantial damage was caused throughout Southwest Louisiana because of landfall of Hurricane Laura on August 27, 2020. *Id.* It alleges that, because of the storm, LCMH invited InPwr representatives to assess damage caused to power systems supporting LCMH facilities as LCMH's emergency backup generators were inadequate. It claims LCMH engaged ServPro as its prime contractor for recovery work, which would include temporary power equipment rental and installation, and that ServPro in turn entered into a Master Subcontract Agreement and Statement of Work with InPwr for InPwr to complete work necessary to restore LCMH's power. InPwr claims it began work on September 3, 2020, and, "[t]hrough a combination of its own in-house engineering resources and the procurement of critical power equipment from ESP," it was able to supply full temporary power to LCMH by October 11, 2020. Doc. 1, p. 3. It claims its work was directed by representatives of LCMH and that "representatives of . . . LCMH ensured" it would be paid for its work, a promise upon which it relied. *Id.*

ServPro answered InPwr's complaint and asserted its own cross-claims against LCMH. Doc. 26. In providing background for its cross-claims, ServPro reiterates that LCMH hired ServPro to restore the hurricane-damaged buildings and provide supplementary power, stabilization, water extraction and mold prevention services and equipment, as well as cleaning and sanitation. Doc. 26, p. 8-9. ServPro alleges that it sent a Rate Sheet and Service Agreement to LCMH representatives after negotiating the same with LCMH's insurer and that ServPro undertook the LCMH restoration work under the direction of LCMH and its insurer. Doc. 26, p. 8-9.

---

[2] By Report and Recommendation, we suggested to the district court that it determine we do enjoy subject matter jurisdiction and the recommendation has been adopted by the district court. Docs. 142, 155.

In its cross-claim against LCMH, ServPro makes the following claims:

> **COUNT ONE: BREACH OF CONTRACT**.  ServPro claims that LCMH breached an express or implied contract to pay ServPro in accordance with its Rate Sheet and Service Agreement, and that LCMH owes ServPro recompense for "providing services and power generating equipment to LCMH in accordance with LCMH and its insurance comapany's direction" plus overhead and profit.  Doc. 26, p. 11, ¶ 23-28.
>
> **COUNT THREE:**[3] **UNJUST ENRICHMENT**.  ServPro claims that the equipment it provided was for the benefit of LCMH and provided with LCMH's full knowledge. Accordingly, it alleges that LCMH was unjustly enriched for services for which ServPro never received payment. *Id.*, p. 12, ¶ 29-34.
>
> **COUNT FOUR: OPEN ACCOUNT**.  ServPro claims that LCMH has failed to pay amounts owed to it on open account, entitling ServPro to claim those sums and reasonable attorney fees under La. R.S. § 9:2781. Doc. 26, p. 12-13, ¶ 35-37.

Although LCMH has answered ServPro's unjust enrichment claim, LCMH maintains that ServPro's breach of contract and open account claims are not viable because "LCMH never approved or entered into a contract" with ServPro.  Doc. 53, p. 6.  LCMH therefore requests dismissal of counts one and four of ServPro's cross-claim pursuant to Fed. R. Civ. P. 12(b)(6).

In opposition to the Motion to Dismiss, ServPro aruges that relief under Rule 12(b)(6) is inappropriate on the basis alleged by LCMH, *i.e.*, there existed no contract upon which all claims are based.  ServPro states that "LCMH ignores that the issue of whether or not a contract exists is a question of fact that cannot be decided at the Rule 12(b)(6) stage[.]" Doc. 71, p. 7 (citing *Deggs v. Aptim Maint., LLC*, No. CV 19-00406, 2021 WL 1208874, at *2 (M.D. La. Mar. 30, 2021). ServPro further argues that LCMH ignores the allegations of its cross-claim tending to show (if accepted as true) that LCMH entered into an express or implied contract with ServPro for the restoration work.  Doc. 71, p. 7-8.

---

[3] There is no count two in ServPro's cross claim.

In reply, LCMH again focuses on non-existence of any contract between LCMH and ServPro ("[n]ot only was there no LCMH-SP contract in existence, but there never existed LCMH-IP or LCMH-ESP contracts either." doc. 80, p. 4.). ServPro also argues that any such contract would be an absolute nullity in contravention of public order under the then-applicable emergency declaration, which prohibited price gouging in hurricane-damaged areas. Doc. 80, p. 5.

LCMH's arguments here are similar to those raised in motions to dismiss concerning InPwr's claims and ESP's cross-claims. Docs. 23, 24. In its memorandum in support of the motion to dismiss ServPro's claims, LCMH adopts and incorporates the arguments raised in is memorandum regarding InPwr's claims. Doc. 53, att. 1, p. 1. The court has since denied the motions to dismiss InPwr's and ESP's claims,[4] and we recommend that the court deny the instant motion for the same reason: LCMH's insistence as to the non-existence of a contract between itself and ServPro is not the proper subject of a Rule 12(b)(6) inquiry.

In supplemental authority, LCMH draws the court's attention to a recently-issued opinion in another case arising from hurricane damage restoration work. Doc. 101. LCMH suggests that the ruling requires this court to grant LCMH's motion as to the breach of contract claims. In *RACM LLC v. Glad Tidings Assembly of God Church of Lake Charles*, No. 2:21-CV-03580, 2022 WL 90160 (W.D. La. Jan. 7, 2022), the district court dismissed a breach of contract claim filed by RACM LLC after determining that plaintiff met the statutory definition of a "contractor" for the purposes of La. R.S. § 37:2150.1, but was not licensed as a contractor in Louisiana. *Id.* at *3. In so doing, the court determined that any contract between plaintiff and defendant in that matter would be an absolute nullity under La. R.S. § 37:2160(A), and La. Civ. Code art. 2030, requiring dismissal of the breach of contract action. *Id.* at *4. Acknowledging the similarity between *RACM*

---

[4] Doc. 166, *report and recommendation adopted at* doc. 175 (concerning InPwr); doc. 176, *report and recommendation adopted at* doc. 185 (concerning ESP).

and the case at bar, we note that LCMH raises the same argument in its recently filed Motion for Partial Summary Judgments as to the Limited Scope of Claims Available to ServPro and ESP [ . . . ]. Doc. 169. We therefore suggest that the district court defer resolution of that argument to the pending motion for summary judgment as that would be the more appropriate vehicle for consideration of the issue.

## II.
### LAW AND ANALYSIS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus exclusively on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court also reviews such motions "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). While factual assertions are presumed to be true, "labels and conclusions" and "formulaic recitation of the elements of a cause of action" are not enough to withstand a 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court's task in evaluating a motion to dismiss under Rule 12(b)(6) is "not to evaluate the plaintiff's likelihood of success," but instead to determine whether the claim is both legally cognizable and plausible. *Billups v. Credit Bureau of Greater Shreveport*, 2014 WL 4700254, at *2 (W.D. La. Sep. 22, 2014) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). When considering a motion under Rule 12(b)(6),

> a court generally "may not go outside the pleadings." *Colle v. Brazos Cty., Tex.*, 981 F.2d 237, 243 (5th Cir. 1993). However, the court may consider documents outside of the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *See Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 F. App'x 336, 340-41 (5th Cir. 2011) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)); *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

*Boudreaux v. Axiall Corp.*, CV 18-0956, 2022 WL 838923, at *4 (W.D. La. Mar. 21, 2022). We agree with ServPro that LCMH's insistence of non-existence of a contract alleged to exist by ServPro in its cross-claim is not a proper Rule 12(b)(6) inquiry. Given the constraints on our consideration in a Rule 12(b)(6) context, we are bound to recommend that the motion be denied.

### III.
### CONCLUSION

For the reasons stated, **IT IS RECOMMENDED** that Defendant LCMH'S Fed. R. Civ. P. Rule 12(b)(6) Motion to Dismiss Crossclaims Made by Defendant, Olson/Servpro [doc. 53], filed by Southwest Louisiana Hospital Association, d/b/a Lake Charles Memorial Hospital be **DENIED**.

Under the provisions of 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429-30 (5th Cir.1996).

THUS DONE AND SIGNED in Chambers this 18th day of October, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE