**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **INPWR INC** | **CASE NO. 2:21-CV-00821** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **OLSON RESTORATION L L C ET AL** | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Pending before the Court is a Motion for Partial Summary Judgment as to the Limited Scope of Claims Available to Servpro and ESP, respectively, as a Result of Neither One Having a Louisiana Commercial Contractor License to Perform the Work at Issue, While Engaged in a Bad Faith Price Gouging Scheme ("Motion for Partial Summary Judgment") [Doc. No. 169] filed by Defendant, Cross-Claimant, and Counter-Claimant Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital ("LCMH"). Defendant/Counter-Defendant Expediated Service Partners, LLC ("EPS") and Defendant/Cross-Defendant Olson Restoration, LLC d/b/a Servpro Disaster Recovery Team Olson ("ServPro") filed Oppositions [Doc. Nos. 198, 206]. LCMH filed Replies to the Oppositions [Doc. Nos. 216, 217].

For the following reasons, the Motion is **DENIED**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

This lawsuit arises out of the aftermath of Hurricane Laura ("the hurricane") in 2020. Various medical facilities owned, operated, or controlled by LCMH experienced damage because of the hurricane. InPwr initiated this suit to recover alleged damages incurred as a result of emergency remediation services performed at LCMH health care facilities.

The events leading up to the suit are as follows. LCMH engaged with various entities to help remediate various issues related to the damage suffered as a result of the hurricane. LCMH

engaged The Lemoine Company, Inc. ("TLC") as project manager and DCMC, LLC ("DCMC") as a FEMA consultant for the remediation project.[1] ServPro served as the general contractor to LCMH under the direction of TLC and DCMC.[2] ServPro entered into a subcontract with InPwr.[3] Under the subcontract, InPwr would perform various tasks on the remediation project.

ServPro entered into a lease agreement with ESP. Under the lease agreement, ESP agreed to lease power generation equipment and provide incidental services for the leased equipment.[4] ESP also entered a separate lease agreement with InPwr, whereby ESP agreed to lease power generation equipment to InPwr for the remediation project.

ESP invoiced ServPro and InPwr pursuant to the terms of the contracts the parties had entered into at the agreed upon prices.[5] ServPro submitted ESP's invoice to LCMH for payment.[6] During the remediation project, payment disputes arose between the parties, and InPwr initiated this action to recover alleged damages it incurred during the remediation project.[7] The Original Complaint[8] named ServPro, LCMH, and ESP as defendants. In response to the Original Complaint, ESP filed a counterclaim against InPwr, a crossclaim against LCMH, a crossclaim against Servpro, and several third-party demands.[9]

The crossclaim against LCMH asserted two claims: lien enforcement pursuant to the Louisiana Private Works Act ("PWA") and unjust enrichment.[10] LCMH filed the instant Motion for Partial Summary Judgment on September 1, 2022.[11] In the instant Motion LCMH seeks to limit

---

[1] [Doc. No. 198-1 (Williamson Affidavit), ¶ 5]
[2] [Id. at ¶ 6]
[3] [Id. at ¶ 7]
[4] [Id. at ¶ 8]
[5] [Id. at ¶ 18]
[6] [Id. at ¶ 22]
[7] [[Doc. No. 1]
[8] [Doc. No. 1 (Original Complaint)]
[9] [Doc. No. 4]
[10] [Doc. No. 4, p. 14]
[11] [Doc. No. 169]

ESP's crossclaim and ServPro's breach of contract claim on two grounds. First, LCMH argues that the scope of work performed by ESP and ServPro required a Louisiana contractor's license, which neither possessed. Second, LCMH argues that ESP and ServPro engaged in a bad faith "price-gouging scheme."

The issues are briefed, and the court is prepared to issue a ruling.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted).; *see also* FED. R. CIV. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337,

343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248). However, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

Note that "a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial." *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991); *see also Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978) ("If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved . . . . The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.").

### B. Analysis

The instant case requires an analysis of the PWA, whether ESP and ServPro were required to obtain commercial contractor's license before performing the work at issue, and whether LCMH has met its burden of proving that ESP and ServPro engaged in a bad faith price-gouging scheme. The Court will address each of those issues below.

#### 1. Louisiana Contractor Licensing Law

The term "contractor" means:

> [A]ny person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or

4

> furnishing labor, or furnishing labor together with material or equipment, or installing the same for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, or any other construction undertaking for which the entire cost is fifty thousand dollars or more when the property is to be used for commercial purposes.

La. R.S. 37:2150.1(4)(a). The term "contractor" includes general contractors, subcontractors, architects, and engineers who receive an additional fee for the employment or direction of labor, or any other work beyond the normal architectural or engineering services. La. R.S. 37:2150(1)(4)(b).

### a. ESP's Private Works Act Lien

Under the PWA, the following persons have a privilege to secure the following obligations of the owner arising out of work on the immovable:

> (1) Contractors, for the price of their work.
>
> (2) Laborers or employees of the owner, for the price of work performed at the site of the immovable.
>
> (3) Sellers, for the price of movables sold to the owner that become component parts of the immovable, or are consumed at the site of the immovable, or are consumed in machinery or equipment used at the site of the immovable.
>
> (4) Lessors, for the rent of movables used at the site of the immovable and leased to the owner by written contract.
>
> (5) Professional consultants engaged by the owner, and the professional subconsultants of those professional consultants, for the price of professional services rendered in connection with a work that is undertaken by the owner.

La. R.S. 9:4801. Here, ESP leased emergency equipment to ServPro and provided incidental labor to operate and monitor the equipment. Additionally, ESP agreed to lease emergency equipment to InPwr. As such, ESP would qualify as a claimant pursuant to La. R.S. 9:4802(4) as a lessor for the

5

rent of movables used at the immovable and leased to the subcontractor or contractor by written contract.

### b. Whether the Work Performed by ESP and ServPro Required a Contractor's License

LCMH contends that the incidental work performed by ESP and the water remediation services performed by ServPro required a valid contractor's license. In response, ESP contends that the claimants referenced in La. R.S. 9:4802(2-5) – the non-contractor claimants – are not required to obtain a contractor's license to assert a claim under the PWA. ServPro argues that a contractor's license is not required for water remediation services. In support of its argument, LCMH cites several cases in which courts held that a contractor did not have a valid claim because they did not have a valid contractor's license.[12] However, those cases are distinguishable from the instant case.

In *Ilgen*, the general contractor entered into an agreement with the owner to perform clearing and dirt work in preparation for a residential development project. *Ilgen Construction, LLC*, 2020-0862 La. App. 1 Cir. 4/16/21. When the owner refused to pay for the work, the general contractor filed a lien under the PWA. *Id*. The court affirmed dismissal of the lien claim because the contractor was not licensed. *Id*. Here, however, unlike the claimant in *Ilgen*, ESP was not the general contractor. Additionally, ESP leased equipment and performed some incidental services related to the equipment, whereas the contractor in *Ilgen* performed clearing and dirt work. ServPro also did not perform clearing and dirt work but rather performed water remediation services, the

---

[12] LCMH cited to: *Ilgen Constr., LLC v. Raw Materials, LLC,* 2020-0862 (La. App. 1 Cir. 4/16/21); *Leija v. Gathright*, 51049 (La. App. 2 Cir. 12/21/16); 211 So.3d 592; *State Licensing Bd. for Contractors v. La. State Dep't of Agric. & Forestry*, 588 So.2d 1268, 1269 (La. App. 1 Cir. 1991); *RACM LLC v. Glad Tidings Assembly of God Church of Lake Charles*, No. 2:21-CV-03580, 2022 WL 2292799 (W.D. La. June 24, 2022); and *RACM LLC v. Glad Tidings Assembly of God Church of Lake Charles*, No. 2:21-CV-03580, 2022 WL 3162186 (W.D. La. Aug. 8, 2022) in support of its argument.

latter of which does not require a contractor's license. *See infra*, p. 8 for analysis on why water remediation services do not require a commercial contractor's license.

In *Leija*, a general contractor entered an agreement with a property owner to construct a home. *Leija*, 51,049 La. App. 2 Cir. 12/21/16. When the general contractor filed a lien, the owner moved for summary judgment dismissing the lien claim because the contractor was not licensed. *Id*. Here, ESP was not the general contractor and neither ESP nor ServPro engaged in the construction of a building – something that clearly requires a contractor's license.

In *State Licensing Bd. For Contractors*, the Licensing Board filed a petition for declarative and injunctive relief against the defendants for performing the construction of a building without a contractor's license. *State Licensing Bd. for Contractors*, 588 So.2d 1268. The court affirmed the judgment that defendants were required to be licensed. Here, neither ESP nor ServPro participated in the construction of a building – something that clearly requires a contractor's license. Additionally, unlike in *State Licensing Bd. For Contractors*, the Louisiana Licensing Board has not instituted an action against ESP or ServPro for violations of the Louisiana Contractor Licensing Law.

In *RACM*, a contractor and owner entered a contract for water remediation. *RACM LLC*, 2022 WL 2292799. Payment disputes arose, and the contractor filed suit for breach of contract and open account claims against the owner. *Id*. at *1. The owner filed a motion to dismiss on the grounds that the contractor was not licensed at the time it executed the contract. *Id*. The court granted the motion and dismissed the contract claim. *Id* at *2. In response, the contractor filed a motion to reconsider to reinstate the contract claim and an amended complaint, and the owner filed a subsequent motion to dismiss. *RACM LLC*, 2022 WL 3162186, at *2. The court converted the motion for reconsideration and the motion to dismiss to motions for summary judgment. *Id*.

The contractor argued on summary judgment that genuine issue of material fact existed as to the scope of work, and that it was not required to obtain a contractor's license because the scope of work did not include construction, but only water remediation. *Id*. at *3. The court agreed, stating:

> The Court agrees with [the contractor] that the breach of contract claim must be reinstated due to [the owner's] lack of response and submission of summary judgment evidence to create a genuine issue of material fact for trial as to the scope of work performed by [the contractor] under the Contract. Also, the undisputed summary judgment evidence establishes that the Contract as performed was solely for water remediation/dewatering.

*Id*. at *4. The court also noted that Louisiana law is clear that a contractor need not have a license to perform "de-watering or mitigation services," and that "carpet removal, drywall work, ceiling tile and grit removal,…air scrubber usage, water remediation, structural drying, and selective demolition" constitute "de-watering or water mitigation services under the Louisiana statute." *Id*.

Here, ServPro engaged in water remediation services. Such work did not require a valid commercial contractor's license. Similarly, ESP was not a general contractor and leased emergency equipment and provided incidental services for the leased equipment. LCMH has not cited any authority to support the notion that leasing emergency equipment and providing incidental services related to said equipment requires a contractor's license. While that question may be closer than the question of whether a contractor's license is required for water remediation services, there still exists a genuine question of fact as to whether ESP was required to obtain a commercial contractor's license. Additionally, the *RACM* court ultimately held that a genuine issue of material fact (as to the scope of work performed by the contractor) existed and denied summary judgment.

Accordingly, the Court finds that a genuine issue of material fact as to the scope of the work performed exists. Specifically, a genuine issue as to whether the work performed by ESP and ServPro required a valid contractor's license exists.

### 2. Bad Faith Price-Gouging Scheme

Bad faith is not "mere bad judgment or negligence[;] it implies the conscious doing of a wrong for dishonest or morally questionable motives." *M.D. Claims Grp., LLC v. Anchor Specialty Ins. Co.*, No. CV 17-00369-BAJ-RLB, 2018 WL 6739066, at *4 (M.D. La. Dec. 24, 2018) (*citing Volentine v. Raeford Farms of Louisiana, LLC*, 50,698 (La. App. 2 Cir. 8/15/16), 201 So. 3d 325, 338, *writ denied,* 2016-1924 (La. 12/16/16), 212 So. 3d 1171, and *writ denied,* 2016-1925 (La. 12/16/16), 212 So. 3d 1171. Summary judgment is rarely appropriate "where motivation and intent are at issue." *Id*. (citations omitted). Courts have denied summary judgment as premature where the parties were still engaged in discovery. *See United States EEOC v. Mid S. Extrusion, Inc.*, 341 F. Supp. 3d 653, 660 (W.D. La. 2018); *See also Bailey v. KS Mgmt. Servs.*, LLC, 35 F.4th 397, 401 (5th Cir. 2022) (Where the court stated "[s]ummary judgment is only appropriate where the plaintiff has a full opportunity to conduct discovery.") (internal quotations omitted).

Here, LCMH contends that ESP and ServPro "participated in a bad faith price-gouging scheme, trying to hide the fact that all three contractors were patching together very excessive markups of equipment rental rates and labor hourly rates, while hiding or at least refusing to disclose readily accessible actual cost information, for more than a year."[13] LCMH does not define what exactly constitutes "price-gouging."

In response, ESP contends that it has no contractual relationship with LCMH and, therefore, it has no duty to disclose actual costs incurred with a third party. ESP also contends that

---

[13] [Doc. No. 169-2, p. 9]

9

summary judgment on the issue of bad faith is inappropriate at this stage in the litigation. ServPro contends that summary judgment on the issue of bad faith is premature, and that its rates were not inappropriate. ServPro also argues that there is no evidence of bad faith or price-gouging as its rates were approved by LCMH's insurance company and a FEMA consultant.[14]

Considering the above stated principals concerning bad faith and summary judgment, and the fact that discovery is still ongoing (a scheduling order has not been rendered as of the time of this ruling),[15] the Court finds that summary judgment as to the bad faith of ESP and ServPro is inappropriate at this time.

### 3. Motion to Strike Exhibits Attached to LCMH's Reply

For the reasons stated above, even if the Court considered the exhibits attached to LCMH's Reply,[16] the conclusion of this Ruling would not change. Accordingly, the Motion to Strike Exhibits Attached to LCMH's Reply[17] is moot.

### III. CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital's Motion for Partial Summary Judgment as to the Limited Scope of Claims Available to Servpro and ESP, respectively, as a Result of Neither One Having a Louisiana Commercial Contractor License to Perform the Work at Issue, While Engaged in a Bad Faith Price Gouging Scheme [Doc. No. 169] is **DENIED**.

---

[14] [Doc. No. 206, p. 19]

[15] *See ENTU Auto Serv., Inc. v. Picmyride.Biz, LLC*, No. CV 15-1183, 2015 WL 13047523 (W.D. La. Aug. 25, 2015), where the court stated: "No scheduling order has been issued in this case, and there is no pending dispositive motion deadline in this matter. Consequently, there will be no prejudice to Mr. Hendrix if this Court denies his pending motion for summary judgment as premature and permits ENTU to conduct discovery. Conversely, significant prejudice could inure to ENTU were this Court to foreclose the possibility of permitting any discovery under the circumstances of this case."

[16] [Doc. No. 216]

[17] [Doc. No. 222]

**IT IS FURTHER ORDERED** that the Motion to Strike Exhibits Attached to LCMH's Reply in Support of Motion for Partial Summary Judgment [Doc. No. 222] is **DENIED** as moot.

MONROE, LOUISIANA, this 9th day of November, 2022.

                                                            Terry A. Doughty
                                            United States District Judge